# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| BAKER RANCHES, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 3:21-cv-00150-GMN-CSD |
| vs. | ) | |
| | ) | **ORDER DISMISSING CASE** |
| DEB HAALAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs filed this case in state court seeking to enjoin federal government Defendants from certain actions allegedly diverting the Baker and Lehman Creeks in violation of a state court water rights decree. Defendants removed the case to federal court, but this Court subsequently remanded the case under the prior exclusive jurisdiction doctrine.[1] (Remand Order, ECF No. 48). Defendants appealed, and the Ninth Circuit vacated the Remand Order and remanded for this Court to consider whether the United States waived its sovereign immunity in the first instance. (Mem. Dec., ECF No. 59).

At the direction of the Court, the parties filed two competing motions: Defendants filed a Motion to Dismiss, (ECF No. 67), and Plaintiffs filed a Motion to Remand, (ECF No. 68).[2] Because the United States has not waived its sovereign immunity under the McCarran Amendment relative to the claims in this case, the Court GRANTS the Motion to Dismiss and DENIES the Motion to Remand.

///

///

---

[1] The Court denied Defendants' competing motion to dismiss for lack of subject matter jurisdiction, which raised the issue of sovereign immunity. (Remand Order, ECF No. 48); (First Mot. Dismiss, ECF No. 34).
[2] The parties filed Responses and Replies to each motion, (ECF Nos. 76, 77, 79, 80).

## I.   **BACKGROUND**

Plaintiffs Baker Ranches, Inc., David John Eldridge and Ruth Eldridge, Zane Jordan, and Judee Schaley own rights to water from Baker and Lehman Creeks. (Decl. of Eric Lord ¶ 4, Ex. A to Mot. Dismiss, ECF No. 67-1).  Their rights were adjudicated and decreed by the Seventh Judicial District Court of Nevada (the "Decree Court") in 1934 following the water adjudication of Baker and Lehman Creeks (the "Baker-Lehman Adjudication"), a process which lasted almost a decade. (Decree, Ex. B to Mot. Dismiss, ECF No. 67-2).  Baker and Lehman Creeks originate and flow through what is now Great Basin National Park, and which at the time of the adjudication was part of the Nevada National Forest.[3] (Lord Decl. ¶¶ 4–9, Ex. A to Mot. Dismiss).  The Nevada National Forest was withdrawn from the public domain in 1909. (*Id.* ¶ 4).

At the beginning of the adjudication process, the State Engineer ordered "[a]ll claimants to rights in and to the waters of said stream system [] to make proof of their claims in the manner prescribed by law." (State Engineer Baker-Lehman Adjudication File at 2, 18–20, Ex. 48 to First Mot. Remand, ECF No. 33-4).  Near the end of the process, the State Engineer issued an Order of Determination "defining the several rights to the waters of the stream system." (*Id.* at 69–82).

The Order of Determination did not list the United States as a claimant or appropriator to water rights of Baker or Lehman Creeks.  Nonetheless, records indicate that the State Engineer included the U.S. Department of Agriculture[4] as a "claimant" when it mailed the Order of Determination to claimants. (*Id.* at 103, 112).  Similarly, when the Decree Court set a hearing on the Order of Determination, the Decree Court notified all claimants—as well as the U.S.

---

[3] The Nevada National Forest was later incorporated into the Humboldt-Toiyabe National Forest.
[4] The United States Forest Service is an agency within the Department of Agriculture.

Department of Agriculture—of the hearing. (*Id.* at 113–14).  The United States did not submit claims or otherwise participate in the Baker-Lehman Adjudication.

Following the hearing, the Decree Court issued the Baker-Lehman Decree determining certain water rights to Baker and Lehman Creeks and their tributaries. (Decree, Ex. B to Mot. Dismiss).  The Baker-Lehman Decree provides:

> That the Judgment and Decree to be hereinafter entered should provide that each and every water user of the Baker and Lehman Creeks stream system and its tributaries, and each of agents, attorneys, servants, employees, and their respective successors in interest, and each and every person acting in aid or assistance of said parties, or either or any of them, be perpetually enjoined and restrained as follows, to-wit:

> (a) From at any time diverting or using or preventing or obstructing the flow, in whole or in part, in or along its natural channel, of any of the water or said stream system, except to the extent and in the amount and in the manner and at the time or times fixed by this Decree and allocated, allowed, prescribed, and determined to such parties respectively, and as may be allowed in the permits which have been or may hereafter be granted by the State Engineer of the state of Nevada.

> (b) From diverting from the natural channel and from using any of the said water for irrigation or any other purpose in excess of the amount specifically allotted to or for said party herein and fixed by this Decree, or in excess of the specified allotment under such permit or permits so heretofore granted or which may hereafter he granted by said State Engineer.

> (c) From diverting from the natural channel and from using any of the said waters in any other manner or for any other purpose or purposes or upon any other land or lands or in any other amount than as provided and prescribed by the terms or this Decree or by any such permit so granted by said State Engineer.

> (d) From diverting from the natural channel and from using any of the said water at any other time or times than as specified and provided by the terms of this Decree or by any such permit so granted by the said State Engineer.

> (e) From in any manner meddling with, opening, closing, changing, injuring, or interfering with any headgates, weirs, water-boxes, flumes, or measuring devices, or either or any of them, placed, installed, established, or approved

> by said State Engineer or by his authority or direction, unless such act be done with the permission or authority of the water commissioner or commissioners on said stream system during the period of his regulation or control of said water, or, if not done during such period of his control, then by virtue or the allowances, authority, terms, and provisions of this Decree or by a permit so granted by said State Engineer.

(Decree 26:6–27:18, Ex. B to Mot. Dismiss).

Plaintiffs are successors in interest to certain water rights set forth in the Decree. (Compl. ¶¶ 1–4). The Decree did not determine any of the United States' rights, but the United States later acquired two decreed water rights unrelated to the claims in this case. (Lord Decl. ¶¶ 12–13, Ex. A to Mot. Dismiss). One of these acquired water rights was initially issued to claimant C.T. Rhodes, who was the successor-in-interest to a homestead property located near a natural feature known as Cave Springs. (*Id.* ¶ 11). Although Rhodes was not an employee of the United States, he provided caretaking services for Lehman Caves National Monument from 1922 to 1934 pursuant to a special use permit from the U.S. Forest Service. (*Id.*).

Plaintiffs allege that Defendants are obstructing the flow of water through the Park, depriving Plaintiffs of their decreed rights. (*See generally* Compl.). Plaintiffs specifically ask the Court to enter an order enjoining the United States from diverting or using water from Baker or Lehman Creeks "in excess of their decreed rights,"[5] "from planting vegetation in the riparian corridors of Baker and Lehman Creeks," "from felling trees or other vegetation in the channels of Baker and Lehman Creeks," and "from interfering with Plaintiffs' efforts to remove obstructions and debris from the Baker and Lehman Creek," among other relief. (Compl. ¶ 36). After the Ninth Circuit affirmed in part, vacated in part, and remanded in part[6] this Court's

---

[5] To the extent Plaintiffs allege that Defendants have diverted water for use at campgrounds, Defendants appear to have ceased this activity. (Lord Dep. 244:16–17, Ex. D to Mot. Dismiss, ECF No. 67-4).

[6] The Ninth Circuit affirmed the Court's denial of attorney's fees and costs, vacated the decision to remand the action to state court, and remanded for this Court to consider the issue of sovereign immunity in the first instance. (Mem. Dec.).

Order granting Plaintiffs' first Motion to Remand, Plaintiffs again move to remand this case to state court and Defendants again move to dismiss for lack of subject matter jurisdiction.

## II.   <u>LEGAL STANDARD</u>

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  The parties agree that the Court lacks jurisdiction but urge the Court to follow different procedural mechanisms to dispose of this case: Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Procedure 12(b)(1), and Plaintiffs filed a Motion to Remand under 28 U.S.C. § 1447.  Because the Court ultimately agrees with Defendants that dismissal is the proper procedural outcome, the Court provides the legal standard for Rule 12(b)(1) motions below.

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).  When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  Accordingly, the court will presume it lacks subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss under Rule 12(b)(1) may be construed two ways: (1) as "facial," meaning that it attacks the sufficiency of the allegations to support subject matter jurisdiction, or (2) as "factual," meaning that it "attack[s] the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (noting that the court may consider evidence presented in a factual dispute).  When a defendant

asserts a factual attack, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  Defendants assert that Plaintiffs' Complaint fails to survive either a facial or factual challenge to jurisdiction. (Mot. Dismiss 7:4–5).

## III.    DISCUSSION

The competing motions present one overarching legal question: Does sovereign immunity shield the United States from suit in this case?  When the United States properly invokes sovereign immunity, federal courts have no jurisdiction over claims against the federal government. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  But as the Ninth Circuit panel in this case noted, sovereign immunity also deprives state courts of jurisdiction. (Mem. Dec. at 3) (citing *Cox v. U.S. Dep't of Agric.*, 800 F.3d 1031, 1032 (9th Cir. 2015) (per curiam)).  So even though this case was removed to federal court from state court, if the United States has not waived sovereign immunity, the proper action is dismissal for lack of jurisdiction.  This is the result Defendants urge in their Motion to Dismiss.

Plaintiffs, however, assert that the United States waived its sovereign immunity through the McCarran Amendment.[7] (Mot. Remand 21:1–30:8).  If the United States waived sovereign immunity, then the prior exclusive jurisdiction doctrine applies, and this case should be remanded for the reasons set forth in the Court's prior Order vacated by the Ninth Circuit.[8] (Mem. Dec. at 3); (*see generally* Remand Order).

---

[7] Plaintiffs also argue that the Great Basin National Park's Enabling Act presents another waiver of sovereign immunity separate and apart from the McCarran Amendment. (Mot. Remand 30:1–31:7).  But "[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990)).  Nothing in the Park's Enabling Act can be interpreted as an unequivocal waiver of sovereign immunity. *See generally* 16 U.S.C. § 410mm.

[8] The Court's vacated Order remanding this case relied on *State Engineer of Nevada v. South Fork Band of the Te-Moak Tribe of the Western Shoshone Indians of Nevada*, which notes that under the doctrine of prior exclusive jurisdiction, "when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." 339 F.3d 804, 809 (9th Cir. 2003).

1    The McCarran Amendment waives federal sovereign immunity and grants consent to

2    join the United States as a defendant in a suit in two circumstances: (1) "for the adjudication of

3    rights to the use of water of a river system or other source," or (2) "for the administration of

4    such rights, where it appears that the United States is the owner of or is in the process of

5    acquiring water rights by appropriation under State law, by purchase, by exchange, or

6    otherwise, and the United States is a necessary party to such suit." 43 U.S.C. § 666(a).

7    Plaintiffs' request falls under the second prong of § 666(a); namely, Plaintiffs initiated this suit

8    to *administer* the rights adjudicated in a proceeding that satisfies the first prong.  As a result,

9    Plaintiffs must demonstrate that (1) a comprehensive adjudication of water rights occurred and

10   (2) their claims involve the administration of water rights as contemplated by the McCarran

11   Amendment. *United States v. Dist. Ct. In & For Eagle Cnty., Colo.*, 401 U.S. 520, 524 (1971)

12   (noting that the "administration of such rights" in § 666(a)(2) "must refer to the rights described

13   in [§ 666(a)(1)]").  Because the Baker-Lehman Adjudication was not comprehensive, the

14   McCarran Amendment does not waive sovereign immunity, and this case must be dismissed for

15   lack of subject matter jurisdiction.[9]

16   An adjudication of water rights must be "comprehensive" to waive sovereign immunity

17   pursuant to the McCarran Amendment. *San Luis Obispo Coastkeeper v. U.S. Dep't of the*

18   *Interior*, 827 F. App'x 744, 745 (9th Cir. 2020) (citing *United States v. Idaho ex rel. Dir., Idaho*

---

Plaintiffs again argue that *Te-Moak* is directly on point, but *Te-Moak* does not address whether an adjudication
was comprehensive for purposes of the McCarran Amendment.  Accordingly, *Te-Moak* does not assist the Court
in its sovereign immunity analysis.

[9] In its memorandum decision, the Ninth Circuit instructed this Court to consider "(1) whether Baker Ranches'
claims actually involve the administration of water rights as contemplated by the McCarran Amendment;
(2) whether the government's sovereign immunity is impacted by its alleged reserved water rights or its decreed
water rights under the Baker-Lehman Decree that are not at issue in Baker Ranches' action; and (3) whether the
proceedings resulting in the Baker-Lehman Decree constituted a complete adjudication for purposes of the
McCarran Amendment of the water rights at issue in Baker Ranches' action." (Mem. Dec. at 4).  Because the
Court finds that the proceedings were not a complete adjudication, the Court need not determine whether
Plaintiffs' claims involve the administration of water rights because no complete adjudication occurred from
which water rights can be administered.  The Court addresses the United States' alleged water rights that are not
at issue below and finds them irrelevant to this case.

*Dep't of Water Res.*, 508 U.S. 1, 6 (1993)).  To be sufficiently "comprehensive," "an adjudication of water rights 'must include the undetermined claims of all parties with an interest in the relevant water source.'" *Id.* (quoting *United States v. Oregon*, 44 F.3d 758, 769 (9th Cir. 1994)).  When federal reserved water rights are not subject to an adjudication of water rights, such adjudication is not "comprehensive" and sovereign immunity is not waived. *See id.*

The Baker-Lehman Adjudication at issue here did not determine any federal water rights, but the United States had reserved rights at the time of the adjudication.  The United States first reserved land in which the Baker and Lehman Creeks originate and flow through in 1909 for inclusion in the National Forest System.  "[W]hen the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation." *Cappaert v. United States*, 426 U.S. 128, 138 (1976).  "In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators."[10] *Id.*  Because the United States' reserved rights in the Baker and Lehman Creeks were not included in the Baker-Lehman adjudication, the adjudication was not comprehensive for purposes of the McCarran Amendment.

Plaintiffs attempt to cast doubt on the United States' reserved rights by asserting that "there is no federal reserved right on national forests for recreation and administration (the purposes for which NPS illegally uses water)." (Resp. to Mot. Dismiss 20:3–6).  Plaintiffs are correct that Congress did not intend national forests to be reserved for recreational purposes. *United States v. New Mexico*, 438 U.S. 696, 708 (1978).  But the federal land designation of the

---

[10] Plaintiffs argue that, "to the extent the United States has any reserved right associated with the Park, the priority date (1909 or 1922) would be junior to the rights of Plaintiffs" under the prior appropriation doctrine. (Resp. to Mot. Dismiss 6:18–20).  The superiority of water rights, however, is immaterial to the question of whether the Baker-Lehman Adjudication was comprehensive.

land in question has changed several times during the intervening decades and is now part of the National Park Service and undeniably for the purpose of recreation. *See* 54 U.S.C. § 100101.  The evolving purpose for the reserved rights notwithstanding, the United States had reserved rights in the Baker and Lehman Creeks that were not decreed in the Baker-Lehman Adjudication.  As a result, the Baker-Lehman Adjudication was not comprehensive, so the McCarran Amendment's waiver of sovereign immunity does not apply here.

Plaintiffs nonetheless argue that the Baker-Lehman Adjudication was comprehensive because the State Engineer followed all required statutory procedures. (Resp. to Mot. Dismiss 23:27–24:18).  But Plaintiffs do not explain how this has any bearing on the McCarran Amendment's waiver of sovereign immunity.  The Baker-Lehman Adjudication occurred before Congress passed the McCarran Amendment, so the United States could not have been joined in that proceeding absent a separate waiver of sovereign immunity.  Because the United States was not and could not have been joined, its rights were not determined, and the adjudication was not comprehensive.  The State Engineer's compliance with state law has no bearing on the United States' waiver of sovereign immunity.

Plaintiffs emphasize the present-tense language in the McCarran Amendment to argue for its retroactive effect.  Although the McCarran Amendment would waive sovereign immunity for the administration of a *comprehensive* adjudication pre-dating the McCarran Amendment, Plaintiffs cannot go back in time and compel the United States to participate in the Baker-Lehman Adjudication to make it comprehensive.  Plaintiffs' reliance on a Colorado Supreme Court case is similarly misplaced: Plaintiffs cite *United States v. Bell* for the proposition that "when the 'United States was not subject to joinder prior to the McCarran Amendment and its absence from previous adjudications was privileged,' its claims could thereafter be adjudicated and fit into the priority system according to the reservation's date." (Resp. to Mot. Dismiss 19:13–16) (quoting *Bell*, 724 P.2d 631, 642 (Colo. 1986)).  But

Plaintiffs omit the rest of the quote, which states, "once [the United States] *is properly joined and provided the opportunity to adjudicate its claims*, it may be decreed reserved water rights with priorities that antedate other adjudicated water rights to the date of the reservation." *Bell*, 724 P.2d at 642 (emphasis added).  This action is an action for the *administration* of rights decreed in an adjudication.  If an adjudication proceeding were initiated today, the United States would be compelled to participate under the McCarran Amendment.  But unless and until the United States is provided the opportunity to adjudicate its claims, it has not waived its sovereign immunity as it relates to the Baker-Lehman Adjudication.

Plaintiffs further argue that the Baker-Lehman Adjudication was comprehensive because "the United States was duly noticed, chose not to participate other than through its agent [C.T. Rhodes], and acquired decreed rights." (Resp. to Mot. Dismiss 24:15–16).  Even though the United States was put on notice of the adjudication of water rights, the United States could not have been joined in the proceedings because the adjudication predated the McCarran Amendment.  And notice is not sufficient for a comprehensive adjudication; a comprehensive adjudication involves a "general adjudication of all of the rights of various owners on a given stream," including the United States. *Dugan v. Rank*, 372 U.S. 609, 618 (1963) (internal quotation marks omitted).  Moreover, even assuming C.T. Rhodes was an agent of the United States—a proposition with tenuous evidence at best—his participation in the adjudication could not have waived the United States' sovereign immunity. *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996) ("The federal government's appearance in court through its officers and agents, therefore, does not waive the government's sovereign immunity.").

Lastly, to the extent Plaintiffs argue that the United States' subsequent acquisition of decreed rights after the Baker-Lehman adjudication somehow renders the adjudication comprehensive, the Court finds these acquired decreed rights irrelevant to this case.  Plaintiffs'

claims do not stem from the United States' acquired decreed rights. Rather, Plaintiffs' claims relate to the United States' reserved water rights, which were not and could not have been adjudicated in the Baker-Lehman Adjudication. Accordingly, the Court finds that the Baker-Lehman Adjudication was not comprehensive, and the McCarran Amendment's waiver of sovereign immunity is not triggered.

As Defendants note, the Court's decision here does not mean Plaintiffs are without a remedy. The problem for Plaintiffs in this case is that the Baker-Lehman Adjudication predated the McCarran Amendment, so the United States' reserved rights were not decreed in that proceeding. But Plaintiffs could seek to initiate a comprehensive adjudication of water rights on the Baker and Lehman Creeks. Because the United States has since waived sovereign immunity for water rights adjudications under the McCarran Amendment, any adjudication today would necessarily include the federal reserved rights. Plaintiffs have a simpler remedy as well; Plaintiffs could apply for a special use permit from the National Park Service to perform the work they seek to do on Park land and follow the available administrative remedies—up to and including another federal lawsuit—if their request is denied. But even if these alternative remedies did not exist, it would not change the necessary legal conclusion in this case: the United States has not waived sovereign immunity, so this Court and the state courts lack jurisdiction over Plaintiffs' claims.

The parties seek clarification on the effects of this Order on any state court orders filed after this Court's improper remand. Defendants ask the Court to dissolve all post-remand orders entered by the state court. (Mot. Dismiss 21:3–22). Defendants cite 28 U.S.C. § 1450, which states: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." This statute is not relevant here, where the state court entered orders following removal and subsequent (improper) remand. The Court struggled to find any legal authority on point,

perhaps unsurprisingly considering that in general, an order remanding a case to state court following removal is not reviewable on appeal. 28 U.S.C. § 1447(d) (noting that orders remanding cases like this one, removed pursuant to 28 U.S.C. § 1442, are an exception to this general rule).  The Ninth Circuit, however, vacated the Court's Order remanding the case, which means this case was effectively never remanded to the state court.  And "any post-removal action taken by the state court is void." *Meraz v. Ahern Rentals, Inc.*, No. CV-20-2337-RSWL-MMAX, 2020 WL 11884710, at *3 n.3 (C.D. Cal. Sept. 21, 2020) (citing 28 U.S.C. § 1446(d) and *Cal. ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. U.S.*, 215 F.3d 1005, 1011 (9th Cir. 2000)).  Accordingly, any state court orders entered following the Court's March 22, 2022 Order improperly remanding this case to the state court are void, and both this Court and the state court lack jurisdiction to hear this case because the United States has not waived its sovereign immunity.

## IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 67), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand, (ECF No. 68), is **DENIED.**

The Clerk's Office is kindly directed to close this case.

**DATED** this  23  day of August, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT